UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

KATHY MERZ )
    Plaintiff, )
)
v. ) Case Number 2:09-cv-0043
) Judge Nixon/Brown
MICHAEL J. ASTRUE )
Commissioner of Social Security, )
    Defendant. )

To: The Honorable Judge Nixon

**REPORT AND RECOMMENDATION**

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff disability insurance benefits (DIB) as provided under Title II of the Social Security Act as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. (DE 13). For the reasons stated below, the Magistrate Judge recommends that Plaintiff's Motion for Judgment be DENIED, and that the decision of the Commissioner to be AFFIRMED.

**I. INTRODUCTION**

Plaintiff protectively filed her application for DIB on May 24, 2005, alleging an onset date of June 25, 1998. (Tr. 68). Plaintiff alleges that she has been unable to work since June 25, 1998, due to lupus, fibromyalgia, depression, stomach problems, thyroid problems, allergies and hormone problems. (Tr. 56, 85). These applications were denied initially (Tr. 53), upon reconsideration (Tr.

1

46) and again on June 10, 2008, following an administrative hearing (Tr.13-18, 586-602). The ALJ made the following findings:

1.  The Claimant last met the insured status requirements of the Social Security Act on December 31, 1999.

2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 25, 1998 through her date last insured of December 31, 1999.

3.  Through the date last insured, the claimant had the following medical determinable impairments: lupus, fibromyalgia; stomach problems; thyroid problems; allergies; hormone problems, and depression.

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment of combination of impairments.

5.  The claimant was not under a disability as defined in the Social Security Act, at anytime from June 25, 1998, the alleged onset date, through December 31, 1999, the date last insured. (Tr. 13-18).

On February 27, 2009, the AC affirmed the ALJ's decision (Tr. 2-4). This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based on the record as a whole, then these findings are conclusive. Id.

## II. REVIEW OF THE RECORD

Plaintiff was born on June 20, 1957, making her 41 at the time of her alleged onset date and 42 at the time she was last insured for DIB. (Tr. 68). Plaintiff graduated from high school in 1975 and completed Emergency Medical Technician training in 1977. (Tr. 90). Her past relevant work has generally been in the health care field. (Tr. 70, 85). Beyond this, having thoroughly examined the entire record and both briefs, the Magistrate Judge will reference the necessary facts on each statement of error, rather than drafting an entire review of the record.

2

### III.  CONCLUSIONS OF LAW

#### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."  *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996).  Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  However, if the record was not considered as a whole, the Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

#### B.  Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423 (d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-

3

step sequential evaluation process as follows:

    (1)    If the claimant is working and the work constitutes substantial gain activity, benefits are automatically denied.

    (2)    If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

    (3)    If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

    (4)    If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

    (5)    Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the valuation process can be carried by relying on the medical vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id*. In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert (VE) testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423 (d)(2)(B).

### C. Plaintiff's Statement of Errors

Plaintiff alleges the ALJ erred: (1) by finding that the Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months; (2) by failing to consider the effect of Plaintiff's multiple impairments, including pain; (3) by rejecting the opinion of Plaintiff's treating physicians; and (4) by finding that Plaintiff's testimony was not entirely credible. (DE 14, Page 2).

Plaintiff first argues that the ALJ erred by finding that the Plaintiff did not have an

5

impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months. Specifically, Plaintiff argues that the ALJ failed to classify Plaintiff's past relevant work and whether or not she could return to it, failed to state whether she had any transferable skills to other work, failed to determine Plaintiff's residual functional capacity (RFC), failed to state whether a significant number of jobs existed in the national and regional economy that Plaintiff could perform, and failed to have vocational expert testimony or a vocational assessment. (DE 14, Page 3). Additionally, the Plaintiff argues that the ALJ erred by failing to consider the effect of Plaintiff's multiple impairments, including pain.

In the five-step Social Security Disability analysis, the burden of proof lies with the claimant at steps one through four, culminating with a claimant's proof that she cannot perform her past relevant work. If the claimant establishes disability, including establishing that under her RFC she cannot perform her past relevant work, the burden then shifts to the Commissioner to show, at step five, that based on the claimant's RFC, age, education, and work experience, the Claimant can perform other jobs in the national economy. *Hensley v. Astrue*, 573 F.3d 263 (6th Cir. 2009). See also *Jordan v. Comm'r of Social Sec.*, 548 F.3d 417 (6th Cir. 2008).

In the instant case, the ALJ determined that the Plaintiff did not have any impairments that significantly limited her ability to perform basic work-related activities during the relevant time period. (Tr. 15). Contrary to Plaintiff's assertions, this is clearly an RFC. The ALJ defined basic work activities, according to SSR-85-28, to include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions, use of judgement, responding appropriately to supervision, co-workers, and unusual work situations; and dealing with

6

changes in a routine work setting. (Tr. 15-16). Because there were no limitations, the Plaintiff could clearly perform all of her past relevant work. Additionally, and again contrary to Plaintiff's assertions, the analysis at step five, i.e. whether other jobs exist in the national economy that Plaintiff can perform, is only necessary if Plaintiff meets her burden at steps one through four, as a finding that an individual is, or is not, disabled at any step in the evaluation process obviates the need to proceed to the remaining steps. 20 C.F.R. § 404.1520(a)(4).

Simply put, the Plaintiff had the burden to demonstrate that her impairments imposed significant limitations on her ability to work on or before December 31, 1999. The ALJ found that she had not done so and that finding is supported by substantial evidence. Plaintiff applied for benefits approximately seven years after her alleged onset date. (Tr. 56, 68, 85). The medical evidence from the pertinent time period, as discussed immediately below, fails to show that Plaintiff had any significant loss of her ability to perform basic work functions. Further, the medical evidence from the pertinent time period, also as discussed immediately below, fails to show that there were multiple impairments that existed prior to the expiration of her insured period. As such, Plaintiff's first two statements of error are without merit.

Plaintiff next argues that the ALJ erred by rejecting the opinion of Plaintiff's treating physicians, specifically Dr. Melvin Blevins, Plaintiff's primary care physician, and Dr. David Chang, Plaintiff's treating psychiatrist. (DE 14 Page 6-8). An ALJ should give enhanced weight to the findings and opinions of treating physicians since these physicians are the most able to provide a detailed description of a claimant's impairments. 20 C.F.R. § 404.1527(d)(2). Further, even greater weight should be given to a physician's opinions if that physician has treated the claimant extensively or for a long period of time. 20 C.F.R. § 404.1527(d)(2)(I)-(ii). However, if

7

there is contrary medical evidence, the ALJ is not bound by a physician's statement and may also reject it if that statement is not sufficiently supported by medical findings. 20 C.F.R. § 404.1527(d); *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (1994). Additionally, it should be noted that a treating physician's statement that the claimant is "disabled" does not bind an ALJ as the definition of disability requires consideration of both medical and vocational factors. 20 C.F.R. § 404.1527(e)(1); *King v. Heckler*, 742 F.2d 968, 973 (1984).

The ALJ fully considered and discussed the opinions of Dr. Blevins and Dr. Chang and explained the basis for affording them less than controlling weight. (Tr. 17-18). The ALJ noted, as the record substantiates, that their treatment notes from the relevant time period do not support their opinions, which were given over five years later. (Tr. 17-18). Plaintiff's ailments have clearly worsened over the past 10 years but her symptoms at the time of her alleged onset date are what is relevant.

As to Dr. Blevins, Plaintiff mainly relies on a letter, written on February 26, 2006, where Dr. Blevins states that Plaintiff is no longer able to maintain gainful employment, suffers from fibromyalgia, chronic musculoskeletal pain, generalized anxiety, profound depression, significant cardiac dx, and parathyroid dx. (Tr. 524). Plaintiff also relies heavily on Dr. Blevins sworn affidavit, taken on April 21, 2008, that although not formally diagnosed within the relevant time period, Plaintiff "displayed the classic symptoms [of fibromyalgia] as early as 1996." (Tr. 134-136). Dr. Blevins opined that, during the relevant period and continuing to the present, Plaintiff has the RFC to lift less then 10 pounds occasionally, cannot frequently lift, can sit less than four hours in an eight-hour workday, can stand/walk less than two hours in an eight-hour workday, and would have difficulty performing postural movements. (Tr. 135). However, as correctly noted by the ALJ,

8

Dr. Blevins treatment notes during the relevant time period do not, in anyway, support his opinions issued 8 and 10 years after the fact. Plaintiff was not diagnosed with fibromyalgia until several years after her DIB date. Further, Dr. Blevins treatment notes during the relevant time period did not identify any significant restrictions on Plaintiff's physical or mental functioning (Tr. 138-161) nor did those of Plaintiff's other treating physicians, who specifically found her to have normal motor strength, normal gait, and normal sensory examination. (Tr. 522, 552, 557, 560). While Dr. Blevins treatment notes clearly demonstrate that Plaintiff's symptoms have worsened over the past 10 years, during the relevant period, the ALJ correctly noted that Dr. Blevins current opinion is not supported by his treatment notes.

As to Dr. Chang, he opined, nearly nine years after the Plaintiff's insured period ended, that Plaintiff's depression and anxiety severely limited her during the relevant period. (Tr. 164, 166). Dr. Chang stated that "her symptoms were so severe that there were concerns of imminent suicide attempts." (Tr. 164). Further, Dr. Chang reported that her highest GAF was 70 in January 1999, which then lowered to 50 for the rest of 1999. (Tr. 164). As with Dr. Blevins, Dr. Chang's treatment notes during the relevant time period do not support his current opinion. Plaintiff's depression and anxiety treatment after her hysterectomy in 1998 was noted to be working "exceedingly well" and while there were side effects of the medication such as nightmares and headaches, Plaintiff and her treating physicians noted consistent improvement. Further, on October 31, 1999, Plaintiff reported that she has "no new problems except she has had some mild depression in the past, but not currently." (Tr. 552, 555, 558). Additionally, in spite of the fact that Dr. Chang now opines that there were concerns of imminent suicide during the relevant time period, his notes are replete with his consistent determination that Plaintiff was not suicidal from the beginning of his

9

treatment on December 21, 1998 through August 31, 2000, well past the relevant period. (Tr. 438, 440, 445-455). Therefore, based on the foregoing, the ALJ properly afforded less weight to the opinions of Dr. Blevins and Dr. Chang.

Lastly, the Plaintiff argues that the ALJ erred by finding that Plaintiff's testimony was not entirely credible. Specifically, the ALJ found that while Plaintiff's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, her testimony concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with finding that the Plaintiff had no severe impairment or combination of impairments. (Tr. 16-17).

An ALJ's finding on the credibility of a claimant is to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing the witness's demeanor and credibility. *Walters v. Commissioner of Social Security*, 127 F.3d 525 (6th Cir. 1997)(citing 42 U.S.C.A. § 423 and 20 C.F.R. §404.1529(a)). Further, discounting the credibility of a claimant is appropriate to a certain degree where the ALJ finds contradictions from medical reports, claimant's other testimony, and other evidence. *Id*.

Here, the ALJ again correctly noted that the relevant medical records and Plaintiff's own testimony did not support her testimony that she was disabled. Relevant medical records, with the exception of sporadic references to fatigue or lethargy as well as treatment for depression as discussed above, do not indicate that Plaintiff was severely restricted. Further, Plaintiff was able, during the relevant time period, to perform work around the house and in her neighborhood, to drive, and to travel to Hawaii for vacation. (Tr. 452, 454). Further, while Plaintiff testified at the hearing that her pain symptoms became severe in 1999, the medical records do not reflect Plaintiff reporting

10

this to any of her physicians, nor did Plaintiff receive treatment for severe pain during this time. As such, substantial evidence supports the ALJ's credibility determination.

The Magistrate Judge has thoroughly reviewed the entire treatment record of the Plaintiff, including the more than five years of records beyond the disability insurance date. It is quite clear that all of the Plaintiff's ailments have become more severe over the past ten years. Plaintiff has now been diagnosed with fibromyalgia and her pain and fatigue are consistently noted in the record. Additionally, her depression has now worsened and she has been hospitalized for treatment twice after 2002. If she were to apply for benefits today, she would most likely receive them had her DIB status not expired. However, prior to 2000, Plaintiff's treatment records do not indicate any severe ailments or a combination of severe ailments which would entitle her to benefits. While she may have had some mild symptoms of her now severe ailments, the evidence supports the ALJ's determination that at the time Plaintiff's DIB status expired, Plaintiff's ailments were not severe and thus did not render her disabled.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v.*

11

Case 2:09-cv-00043  Document 16  Filed 09/23/09  Page 11 of 12 PageID #: 77

*Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004 (en banc).

ENTERED this 23rd day of September, 2009.

/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge

12